(APRIL TERM, 1905.)

## DEMARS v. HICKEY.

PLEADING—GENERAL DENIAL IN EJECTMENT—PUBLIC LANDS—PATENT FROM UNITED STATES—PRESUMPTION OF REGULARITY OF PROCEEDINGS ANTERIOR TO PATENT—HOMESTEAD ENTRY—RIGHTS IN LAND UPON DEATH OF ENTRYMAN—PROBATE COURT—JURISDICTION—ADMINISTRATOR'S SALE — ESTOPPEL — APPEAL AND ERROR — EVIDENCE—JUDICIAL NOTICE.

1. A general denial in the answer in an action to recover possession of real estate amounts to a denial of a plaintiff's title and an admission of defendant's possession.

2. A party claiming title to land in controversy, in a suit for the possession thereof, under a patent issued by the United State government under the homestead laws, is not required to show the proceedings anterior to patent, but it will be presumed that the patent was regularly issued, and that all the preliminary requirements had been complied with.

3. Under Section 2291, U. S. Revised Statutes, allowing the heirs of a deceased homestead entryman, in certain cases, to make final proof and receive a patent, the heirs do not take the property by descent, but they are entitled in their own right to complete the entry and receive a patent; the statute vests in them, upon their compliance with the prescribed regulations all the rights to perfect and complete the entry and obtain a patent which the original entryman might have had if living.

4. A homestead entryman, under the public land laws of the United States, prior to final proof, has no interest in the land embraced in the entry capable of disposal by will, or that descends upon his death, like other property, to his heirs; and, therefore, upon his death the land does not become in any sense the property of his estate, and does not come within the jurisdiction of the probate court for administration or sale.

5. The land in such case constituting no part of the estate of the deceased entryman, a sale and deed thereof by the administrator of the estate conveys nothing, though made under an order of the probate court.

6. Where, in a suit for the possession of land, plaintiff claimed title under a sale and deed by the administrator of the estate of a deceased homestead entryman, and defendant claimed title under a government patent to the heirs of such entryman, the trial court erroneously instructed the jury that the title was in the plaintiff by virtue of such sale and deed to her under an order of the probate court, and as nothing was left to the jury to determine but the question of damages for detention of possession, the judgment for plaintiff cannot be sustained on error upon the theory that the defendant is estopped by his conduct from denying plaintiff's title; the facts deemed to create such estoppel not having been considered by the trial court nor submitted to the jury.

7. Defendant would not be estopped from denying plaintiff's title from the fact that prior to making final proof by the heirs, and before they had ascertained that the land was not the property of the estate of the deceased entryman, and that they alone could obtain the government title, they had signed a power of attorney authorizing their attorney in fact to "sue for, recover and receive all sums of money, debts due, etc., and prove up on the homestead, and to sell the same for cash in hand or partial payments, as may to the probate court be deemed best," it not appearing that such attorney in fact had made a sale or deed, or conveyed the estate of the heirs, or that the administrator's deed to plaintiff had been made by virtue of the power of attorney, or that such heirs, or their attorney in fact, had consented to the sale by the administrator or the orders of the probate court in the premises.

8. The receipt by the defendant of a certain sum from the administrator of the estate of the deceased entryman would

not constitute an estoppel to deny plaintiff's title under the administrator's deed, it not appearing that the other heirs received any money, or that the money received was a part of the proceeds of the administrator's sale to plaintiff, or in any way connected with the sale of the land; the defendant holding the property for himself and other heirs under the government patent to the heirs of the deceased homestead entryman.

9. Courts do not take judicial notice of their records and proceedings in other causes.

10. In an action to recover possession of real estate, where plaintiff claimed title under an administrator's sale and deed, judicial notice could not be taken of the probate proceedings wherein such sale was ordered, or of the papers therein filed, to show estoppel on the part of defendant by his conduct in such proceedings from questioning plaintiff's title.

[Decided April 17, 1905.]                    (80 Pac., 521.)

[Rehearing denied August 1, 1905.]          (81 Pac., 705.)

ERROR to the District Court, Uinta County, HON. DAVID H. CRAIG, Judge.

The facts are stated in the opinion.

*J. H. Ryckman,* for plaintiff in error.

The District Court and the judge thereof were without power or jurisdiction to make any order for the sale of the land in controversy, or to confirm the sale and direct a deed to the purchaser. The orders of the court in the premises were, therefore, void and of no effect, and the administrator's deed is a nullity and may, therefore, be collaterally attacked. The decedent had no interest in the land that could pass to his estate. (Chapman v. Price, 32 Kan., 446 (4 Pac., 807.) No estate or title vests in a homestead entryman or his heirs until the expiration of five years from the date of entry, coupled with a full compliance with all the required conditions; and no title or estate vests in the administrator of the entryman and cannot be so vested by order of the court or otherwise. (U. S. v. Furnier, 54 Fed., 228;

Schofield v. Houle, 13 Colo., 394; Lovell v. Wall, 31 Fla.,
73; Bolton v. Water Co., 10 Wash., 246.)   Moreover, there
is nothing in the record to show that the administrator in-
ventoried the land in controversy, the title to which was
then in the United States, nor is there anything to show
that he at any time asked for an order of sale of any land
belonging to the United States.   All presumptions are that
the court and the administrator did all things properly and
legally, and hence it will not be presumed that they did any-
thing which they were forbidden to do by the laws of the
United States.   The record does not show that any orders
were ever made as the basis for an order for a deed and the
presumption will, therefore, be that they were not made.
(Lewis v. Lichty, 3 Wash., 213.)

*Hamm & Arnold,* for defendant in error.

The heirs, including the plaintiff in error, gave a power
of attorney authorizing the disposal of the land in contro-
versy.   Under that power the attorney in fact, acting for the
heirs, as well as for the administrator, procured from the
court the various orders of sale and for the disposition of
the proceeds.   The power of attorney authorized the pro-
ceedings which were taken and the plaintiff in error is
bound by what was done; and the court found that such
steps were taken as amounted to the sale of the interest of
the heirs in the property in question.   The court had an ab-
solute right to so conclude.   (R. S. 1899, Sec. 4844.)   The
plaintiff in error could not take advantage of the acts done
for his benefit and then repudiate the acts.   That principle
is true as to after acquired title to lands, as well as to other
matters.   (11 Ency. Law (2d Ed.), 403.)

The court took judicial notice of its own records in the
proper proceedings, including the power of attorney which
was on file in such proceedings, and, therefore, rightly held
that the matter of the sale was *res judicata.*   Where a per-
son has entered public lands and has complied with the
provisions of the land laws so as to entitle him to a patent,

he has in effect the full equitable title, which he may convey before the patent is actually issued. (26 Ency. Law (2d Ed.), 457.) As no appeal was taken from the final judgment in the probate proceedings ordering the sale and afterwards confirming it, and ordering the execution of the administrator's deed, it became binding in all subsequent proceedings and the court might take judicial notice of the records. (24 Ency. Law (2d Ed.), 198.) When jurisdiction depends upon a fact that is litigated in a suit, and such fact is found in favor of the party averring jurisdiction, the question of jurisdiction is judicially decided and the judgment record is conclusive evidence thereof until set aside in a direct proceeding. (12 Ency. Pl. & Pr., 211.)

(On rehearing.) It is respectfully submitted that the testimony in the case is sufficient to show an estoppel by the acts of plaintiff in error. He did not simply stand silent in the presence of another exercising dominion or control of the property, but he executed an instrument which was in the hands of the trial court authorizing the attorney in fact and the administrator to do what they pleased with the homestead. That is the effect of his own testimony and is the highest form of proof, being against his interest. Having so acted, he cannot now repudiate. (11 Ency. Law (2d Ed.), 434; Storrs v. Barker, 6 Johns. Ch., 166; Maple v. Kusart, 53 Pa. St., 348; Cox v. Roger, 77 id., 160; Zollmore v. Moore, 21 Gratt, 313.) The plaintiff cannot now deny that the title to the property enured to the benefit of the one to whom it came under his power of attorney. A deed or instrument of like solemnity carries whatever interest the grantee may have acquired in the subject matter, as well as what he may have at the time of its execution. (11 Ency. Law (2d Ed.), 411; Favill v. Roberts, 50 N. Y., 222.) When one contracts with another for the conveyance of any interest in real estate, he is held bound to the exercise of his obligation, whatever may be the form of the contract or conveyance or other instrument. The title which he may thereafter acquire, even though he had none

at the time of the contract, enures to his grantee. (Ryan v. U. S.; 136 U. S., 68; Van Rensselear v. Kearney, 11 How., 297; Bush v. Person, 18 How., 82; Smith v. Williams, 44 Mich., 240; Case v. Green, 53 id., 615; Reynolds v. Cook, 83 Va., 817.)

POTTER, CHIEF JUSTICE.

This suit was brought in the District Court sitting in the County of Uinta by Betty Hickey against Leon Demars to recover possession of a certain tract of land situated in that county, and for damages. The petition alleges that plaintiff has a legal estate in and is entitled to the immediate possession of the premises, that defendant unlawfully keeps and has kept her out of possession, and that she has thereby been damaged in the sum of three hundred dollars. The answer is a general denial, which amounts to a denial of plaintiff's title and an admission of defendant's possession. (Anderson v. Rasmussen, 5 Wyo., 44.)

The cause was tried to a jury, and a verdict was returned in favor of plaintiff assessing her damages at two hundred dollars. Judgment was rendered upon the verdict for possession and for the damages assessed. Motion for new trial was overruled and defendant brings error. No question is raised in relation to the matter of damages.

The land in controversy was entered as a homestead under the public land laws of the United States by one Joseph Demars, who died while residing thereon without having made final proof or taken the requisite final steps to entitle him to a patent from the government.

His heirs consisted of a mother and certain adult brothers and sisters, the defendant being one of the brothers. After the death of the entryman the defendant made final proof upon the homestead entry for the benefit of the heirs, and a patent was thereafter issued, dated May 19, 1903, whereby the United States granted and conveyed the premises to the heirs of Joseph Demars, the patent reciting that, "pursuant to the act of Congress approved 20th May, 1862, 'To Secure

Homesteads to Actual Settlers on the Public Domain,' and the acts supplemental thereto, 'the claim of the heirs of Joseph Demars had been duly established and duly consummated in conformity to law, for" (describing the land in question).

The defendant claims under that patent, and after it was issued, he took possession of the land for the heirs. The plaintiff claims under a sale and deed made to her by the administrator of the estate of Joseph Demars, deceased, the original entryman, which sale is supposed to have occurred under an order of court in the probate proceedings for the administration of said estate. An order of the District Judge in vacation directing the administrator to make the deed is in evidence, together with a petition of the administrator asking authority to execute a deed, which petition, however, does not recite any facts of the sale, nor does it or the order mention the name of the purchaser. None of the antecedent proceedings in the probate matter were offered in evidence. But for the purposes of the case it may be assumed that such proceedings were regular to authorize the sale of the real estate of a decedent.

The administrator's deed is dated August 31, 1899, but it was not acknowledged until April 14, 1900. As authorized by statute in the event of the sale of real estate by an administrator (R. S. 1899, Sec. 4797), the deed purports to convey "all the right, title, interest and estate of the said Joseph Demars, deceased, at the time of his death, and also all the right, title and interest that the said estate, by operation of law or otherwise, may have acquired other than or in addition to that of the said intestate at the time of his death." The plaintiff went into possession of the land by virtue of the administrator's deed, and continued in possession until the defendant took possession.

The court charged the jury that the title to the property was in the plaintiff, having been obtained by her by virtue of an order of court, and that, as the property had been sold by the administrator and no appeal taken from the order

confirming the sale, and the deed of the administrator had been made in conformity with the order, it is proof that the title to the property is in the plaintiff. The charge was excepted to and is assigned as error. The instruction left nothing for the jury to determine but the question of damages. The right of possession claimed by the plaintiff being based primarily upon the administrator's deed, the important question is whether she acquired any title or right under that deed.

There is no attempt to impeach the patent, even if it would have been competent in this action to impeach it, and it must be presumed that it was regularly issued and that all the preliminary requirements had been complied with. (Smelting Co. v. Kemp, 104 U. S., 636; R. R. Co. v. Tutwiler, 108 Ala., 483.)

The provision of the United States statutes authorizing the perfection of a homestead entry upon the death of the entryman, applicable to the facts in this case, is as follows: "No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two creditable witnesses that he, she or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, 'and makes affidavit that no part of such land has been alienated, except as provided in Section 2288, and that he, she or they will bear true allegiance to the government of the United States; then, in such case, he, she or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law." (U. S. Rev. Stat., Sec. 2291.)

The succeeding section (2292) provides that, in case of the death of both father and mother, leaving a minor child

or children, the right and fee shall inure to the benefit of
such minor child or children, and the executor, adminis-
trator or guardian may, within two years after the death of
the surviving parent, sell the land for the benefit of the
children, but for no other purpose, and that the purchaser
shall acquire the absolute title and be entitled to a patent.
Not all the heirs were citizens of the United States, though
some of them, including the defendant, were.

The Supreme Court of the United States has declared
that the object of those sections is not to establish a line of
descent or rules of distribution of the deceased entryman's
estate, but to provide the method of completing the home-
stead claim and obtaining a patent therefor. (Bernier v.
Bernier, 147 U. S., 242.) And by a long line of decisions
of the Land Department it is held that the administrator of
the estate of a deceased entryman has no right to make final
proof or perfect the entry for patent. (Gale's Case, 6 Dept.
Int., Sec. 573; Carlson's Heirs, 16 id., 556; Brown v.
Hughes' Devisees, 17 id., 156; Tracy v. Schoenau, 22 id.,
403.)

Under Section 2291, *supra,* the heirs do not take the prop-
erty by descent; they are entitled in their own right to
complete the entry and receive a patent. The statute vests in
them, where there is no widow, upon their compliance with
the prescribed regulations, all the rights to perfect and
complete the entry and obtain a patent which the original
entryman might have had if he had lived. They become the
donees or grantees of the government. The entryman has
no interest capable of disposal by will or that descends like
other property to his heirs. Hence the land embraced in
the entry does not become in any sense the property of the
estate, and does not come within the jurisdiction of the
probate court for administration or sale. In the case of in-
fant children surviving both father and mother, the land is,
indeed, authorized to be sold by the administrator or guar-
dian for the sole benefit of the children, but distinctively as
the property of the children, and not of the estate of the

deceased entryman, and the purchaser may become entitled to a patent.

The sale by the administrator, therefore, and his deed to the plaintiff, conveyed nothing. The court in the first place was without jurisdiction to authorize the sale, for the reason that the land constituted no part of the estate of the decedent. (Chapman v. Price, 32 Kan., 446 (4 Pac., 807) ; McCune v. Essig, 122 Fed., 588; Gjerstadengen v. Van Duzen, 7 N. Dak., 612 (66 Am. St., 679) ; R. R. Co. v. Tutwiler, 108 Ala., 483.)

The case of Chapman v. Price, *supra,* seems to be the earliest adjudication of this particular question, and it was there said by the Supreme Court of Kansas, in a contest brought for the possession of land entered under the homestead law, by the executors of the will of the deceased entryman, a patent having been issued to the heirs of such entryman, that the entryman had no interest in the land that could pass by his will, and that the plaintiffs took no title to or interest in the land under the will as executors or otherwise.

In McCune v. Essig, *supra,* a case decided by the United States Circuit Court of Appeals for the Ninth Circuit, Circuit Judge Gilbert delivering the opinion, it was held that a homestead settler has no devisable or descendible interest in the land until he has completed the term of residence required to entitle him to make final proof, and, in the case of his death before that time, the patent to his widow, who completes the residence and makes final proof, conveys the land to her absolutely, and no interest therein passes to the children of her deceased husband. The court said "his right is extinguished by his death, and she, in virtue of the fact that she is his wife, is designated as the donee of the land," and the court further said, in relation to the suggestion that under the doctrine of relation the patent relates back to the date of the initiatory act of entry, "Of what avail would it be to the appellant in this case to invoke this doctrine, and to assert that the patent which issued to the widow of McCune took effect by relation at the time when settlement was

made by him? Granting that it relates back to and takes
effect at that date, it can, nevertheless, detract nothing from
the effect of the widow's title. Her title, as well, relates
back to the initiatory act, and for her benefit only, and not
for the benefit of the heirs of the deceased entryman. Mc-
Cune never received a grant from the United States, nor
acquired any interest in the land which could descend to his
heirs."

The North Dakota case, above cited, is directly in point
except that there the suit was in equity to set aside the ad-
ministrator's deed and to annul the probate proceedings
which had resulted in a sale and deed by the administrator
of land held by the decedent under homestead entry at the
time of her death, occurring before the right to demand a
patent had accrued. It was decided that the probate court
was without jurisdiction to order the sale of the property,
and the court said: "As the land did not belong to the
estate of the deceased, it is obvious that the court was with-
out jurisdiction to order the sale thereof. When the land
directed to be sold is the property of a stranger, the probate
court possesses no jurisdiction over the property; nor has
it any power to try the question of title in such a proceed-
ing, or at all. Should the owner of the land appear in the
proceeding, and set up his title, and be defeated, it would
nevertheless be true that the court would be without juris-
diction. For the statutes do not contemplate that a probate
court shall hear and determine questions relating to the title
to the land. It has power to act only when the real estate
is in fact the property of the decedent. All they can ever
pretend to do in a proceeding of the character of that
which is here assailed is to order the sale of whatever
interest the decedent may have had in the land at the time
of his death." And the court held the proceedings and the
sale absolutely void, for the reason that the land sold did
not belong to the estate of the deceased entryman.

The property sold did not belong to the estate, and the
order for its sale could not properly have authorized and

probably did not in terms authorize the sale of any greater interest than the decedent had at the time of his death, or which, by operation of law or otherwise, became after that time vested in the estate. Hence, giving all due effect to the order, nothing would be conveyed by virtue thereof which did not belong to the estate. The making of final proof by the heirs and the issuance of patent to them did not vest in the estate of the decedent any interest, right or title. The legal title was clearly vested in the heirs, for whom, and in whose right, the defendant held possession. The court erred, therefore, in charging the jury that the title was in the plaintiff.

It is urged in this court, however, that the defendant below, plaintiff in error here, is estopped from denying plaintiff's title by reason of certain facts incidentally brought out upon the trial. That is not the theory on which the case was tried, nor was the sufficiency of the facts to constitute an estoppel determined by the trial court, or submitted to the jury upon appropriate instructions. The question of title and right of possession was taken from the jury, and the amount of damages only was left to their determination. They were instructed in substance that, under the order of sale and the administrator's deed, the plaintiff had acquired title to the property, and that the patent to the heirs did not interfere with or affect that title; the court saying: "The patent that has been introduced is simply to show that the title to that property has been obtained from the United States, and as you are all aware that property may be sold at any time before the patent is obtained."

But the evidence is too indefinite to furnish a sufficient foundation for the claim of estoppel. The facts upon which the claim is based were brought out through questions propounded by the court to Leon Demars, the defendant, during his examination as a witness in his own behalf. The court apparently having before it certain papers filed in the probate proceedings, not offered in evidence, proceeded to interrogate the witness with reference thereto. In answer to

a question by the court, the witness admitted that, together
with all the other heirs but one, he had signed a power of
attorney authorizing one J. W. Sammon "to sue for, re-
cover and receive all sums of money, debts due, etc., and
prove up on homestead and to sell the same for cash in
hand or partial payments as may to the probate court of
said county be deemed best." This language of the sup-
posed power of attorney is quoted from the court's question
to the witness. The instrument was not offered in evidence,
and the remainder of its contents is not disclosed.

The precise purpose and effect of the paper as to the
homestead is perhaps uncertain, but from the meager testi-
mony of the witness on the subject, it would seem to have
been signed before the making of final proof, and before
the defendant and the other heirs had ascertained that the
land was not the property of the estate, and that they alone
could obtain the government title thereto. We know Mr.
Sammon to be a practicing attorney in the county where the
land is located and the probate proceedings were pending,
and it is probable that he was employed to represent the
heirs or the administrator, or both, in closing up the de-
cedent's estate, though just what his connection with the
matter was is not satisfactorily shown. None of the pro-
bate proceedings except as already stated are to be found
in the evidence. Nor is there a showing that Mr. Sammon
took any action under the power of attorney in relation to
the sale of the land. The administrator's deed does not
purport to have been made by virtue of the power of at-
torney. It is not signed by Mr. Sammon, and there does
not appear to have been a deed executed by or for the de-
fendant or the heirs at any time, or any deed purporting to
convey the title acquired by them from the government.

Passing the question whether the heirs could lawfully
have conveyed or authorized the conveyance of their title
before final proof, there is nothing in the evidence to justify
the conclusion that such action was attempted by the power
of attorney. If any inference is permissible from the testi-

mony, the purpose and effect of the instrument would seem to have been to authorize the sale of the interest of the estate of the decedent in the land; the parties evidently believing that the land belonged to the estate. If the consent of the defendant or the heirs to the sale by the administrator would operate to estop defendant from questioning plaintiff's title or right to possession, it is sufficient to say that the fact of such consent is not established. It is not shown that the heirs or their supposed attorney in fact consented to the sale or the orders of the court in the premises. The contents of the power of attorney other than above stated are not in evidence, nor the probate proceedings antecedent to the sale. Courts do not take judicial notice of their records and proceedings in other causes. (Anderson v. Cecil, 86 Md., 490; Bond v. White, 24 Kan., 45; 4 Wigmore on Ev., Sec. 2579; 1 Elliott on Ev., Sec. 58.)

The record discloses that, after the court had elicited the admission as to the signing of a power of attorney, counsel for plaintiff suggested that it might be orderly to introduce the paper in evidence, but the court replied that it was not material, as no action had been taken to vacate the sale, and that the questions had been asked merely to satisfy the court as to Mr. Sammon's authority. Counsel then intimated that a revocation had been made long after the execution of the administrator's deed, which amounted to a recognition of the power of attorney, and the court remarked that the papers might be introduced, but they were immaterial; whereupon counsel stated that he regarded everything as merged in the order of confirmation, which statement the court assented to. This colloquy between court and counsel occurred during the examination of the witness. No further reference was made to the matter on the trial, except that when instructing the jury the court stated that he found among the papers in the case (referring to the probate matter) powers of attorney authorizing the property to be sold, which remark was made in connection with the instruction that the title was in the plaintiff by

virtue of the order of the court. The heirs it seems had been non-residents of the state, and the defendant probably came here about the time of making final proof.

It appears from the same examination by the court of the defendant that he had been promised by someone not mentioned $125 "out of the estate" for coming here from his then place of residence in California, and that he had received from Mr. Sammon fifty dollars out of a check for seventy dollars given by Mr. Hickey, the administrator. It is contended that the acceptance of that money estops the defendant. But whether the other heirs received any money or not does not appear, and, what is more important, there is nothing in the evidence to show that the money received by defendant was a part of the proceeds of the sale. For all that the evidence discloses, the decedent may have left other property, and the money may have been received for a purpose not connected with the sale of the land.

Upon the evidence, therefore, we fail to find the facts established upon which the claim of estoppel is made; and hence there is no necessity for our deciding whether, in this action for possession, founded upon an allegation of a legal estate in the plaintiff, the consent of the defendant or the heirs with or without knowledge of their rights, to the sale by the administrator, would estop the defendant from setting up the legal title of the heirs to defeat the action, nor whether the acceptance and retention of part of the proceeds of the sale by any of the heirs would have that effect.

There was a claim of an equitable estoppel in the North Dakota case above referred to. In that case one of the heirs to whom patent was issued was also the administrator who petitioned for and made the sale, but that fact was held insufficient to create an estoppel, since the administrator had made no representations of title in the estate, but had proceeded under a misapprehension as to the law, which the purchaser shared, that the land constituted a part of the estate, though he did not covenant that it was so; and the court said that the law implied no such covenant, but that,

on the contrary, the purchaser was bound at his peril to see that the proceedings were legal and that the property did form a part of the estate. The court, however, said that, had the heir, knowing himself to be the owner of the land, stood by and saw it sold without protest, and certainly if he had actively participated in the sale, then a case would be presented for the application of the law of estoppel.

In that case also an estoppel was urged because of the claimed acceptance by the heir aforesaid of part of the proceeds of the sale. It was held, however, that the evidence failed to disclose such fact, but the court stated that it would be inclined to the view that, had the fact been shown, an estoppel would have been made out, and the heir could not then be heard in a court of equity to assail the purchaser's title.

For the reasons set forth it is manifest that the judgment cannot be sustained. It will, therefore, be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

BEARD, J., concurs..

### ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

The defendant in error has filed a petition for rehearing, again insisting that the execution of the power of attorney, referred to in the evidence and considered in the previous opinion, should be held to estop the plaintiff in error from claiming title to or right of possession of the premises in controversy. For the reasons stated in our former opinion, we are clearly satisfied that the point is not well taken. If the facts when fully brought out are sufficient to constitute an estoppel, a new trial will afford an opportunity to establish it. It is sufficient to say that enough was not brought out upon the former trial to authorize this court to hold that the plaintiff in error is estopped, in view of the fact that the limited evidence as to the power of attorney was

neither considered by the court nor submitted to the jury upon the theory of estoppel, but was evidently regarded as showing a consent to the sale of property supposed to belong to the estate of the decedent.

The case was confessedly tried and decided in the lower court upon the erroneous theory that the plaintiff in error was bound and concluded by the probate proceedings and the administrator's sale, the order for such sale not having been appealed from, reversed or set aside.

Motion for rehearing will be denied.

BEARD, J., and VAN ORSDEL, J., concur.