**TEXAS WEST OIL AND GAS CORPORATION, Appellant (Plaintiff),**

v.

**FIRST INTERSTATE BANK OF CASPER, and Gordon Gibson, Appellees (Defendants).**

No. 86–123.

Supreme Court of Wyoming.

Oct. 2, 1987.

Jeffrey C. Gosman, Casper, for appellant.

Richard E. Day, and Ann M. Rochelle, of Williams, Porter, Day & Neville, P.C., Casper, for appellee First Interstate Bank of Casper, Susan Mayer Overeem, Casper, for appellee Gordon Gibson.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This case is a sequel to *Texas West Oil and Gas Corporation v. Fitzgerald*, Wyo., 726 P.2d 1056 (1986), involving manufacture of a drilling rig, which case was remanded for retrial on the issue of damages on an intentional-interference claim against a bank loan guarantor. With remand on damages, this court also affirmed an arbitration award that determined a contractual balance remained due and unpaid from Texas West, the buyer, to Oil Patch Sales and Rentals of Wyoming, Inc., the manufacturer.

Texas West has now filed suit, also premised generally on intentional-interference claims, against First Interstate Bank of Casper, N.A., which provided operational funding to Oil Patch, and against Gordon Gibson, president of Oil Patch, as a director, after motions for leave to amend had been filed in the earlier suit to add present appellees as defendants. In this second case, appeal is taken from the order sustaining motions to dismiss by both defendants. Although the court also denied sanctions, attorney's fees and costs requested by Gibson, no cross-appeal was taken.

The briefs in this appeal are replete with contentions of fact not to be discerned in the record, some of which are at the least conclusory and others questionable. A general factual analysis of the controversy is found in this court's earlier decision.

## I

## RES–JUDICATA AND COLLATERAL–ESTOPPEL

## CONSIDERATION BY A MOTION TO DISMISS

■ Our preliminary inquiry is required to determine whether the res judicata or collateral-estoppel defense can be sustained on a motion to dismiss. We recognized the validity of the defined standard that upon entry of an order dismissing a complaint pursuant to Rule 12(b)(6), W.R.C.P., the trial court accepts the pleadings as true, except for facts or records properly subject to judicial notice.

"* * * Although normally a motion to dismiss admits all well-pleaded facts, it does not admit facts which the court can judicially notice *as not being correct* * * *." (Emphasis added.) *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535, 538 (1975),

and we now include facts which the court can judicially notice *as determined or true*.

Many cases consider whether res judicata and collateral estoppel can be determined on the motion to dismiss or can only be raised successfully by summary judgment or affirmative answer processes. This court follows the modern trend which was first enunciated for Wyoming in Weber, that if the information necessary for decision is available to the court by judicial notice, defendant can raise res judicata or collateral estoppel for consideration by a motion to dismiss. Additionally, it is to be recognized that if either party supplements the record by affidavit or other new documentation, then the automatic conversion provision of Rule 12(b)(6) applies in that where matters outside of the pleadings are presented to and not excluded by the court, "the motion shall be treated as one for summary judgment," and the notice provisions and processes therein provided will be utilized. *Torrey v. Twiford*, Wyo., 713 P.2d 1160 (1986).

## II

## JUDICIAL NOTICE

■ For simplicity, we will designate the first case *Texas West I*, and this second case *Texas West II*. In analysis, we find it now necessary to determine what, if any, information from Texas West I could have been judicially noticed by the trial court in

Texas West II to be considered at this time for our appellate review. This case is closely related to Texas West I in that it involves the same transaction, participants, and appellant again as plaintiff. The defendant parties are the only difference. The interrelations of the cases can be more clearly discerned by the history and text of the pleadings.

Within this criteria, and with the entire record of Texas West I remaining in the physical possession of this court following denial of the petition for rehearing, we determine that the rule for review of the sufficiency of the motion to dismiss will be considered by judicially noticing the Texas West I record. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *National Fire Insurance Co. v. Thompson*, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881 (1930); *Weber v. Johnston Fuel Liners, Inc.*, supra; *Ellis v. Cauhaupe*, 71 Wyo. 475, 260 P.2d 309 (1953); *State ex rel. Romsa v. Grace*, 43 Wyo. 454, 5 P.2d 301 (1931); *State in Interest of C*, Wyo., 638 P.2d 165 (1981); 31 C.J.S. Evidence § 50(3)(b) at 1034.

"Because both parties have relied upon the opinion and judgment in the original case and have injected it in both their briefs and arguments, we will rely thereon in determining the sufficiency of this complaint. There is another basis for taking judicial notice of the prior proceedings in the original case between these parties. We do not deem it improper to take notice of the judgment, temporary restraining order, and opinion in the earlier case because of the identity of the parties and the interrelationship of these actions. See *Shuttlesworth v. City of Birmingham*, [supra]; *National Fire Ins. Co. of Hartford v. Thompson*, 281 U.S. 331, 50 S.Ct. 288, 290, 74 L.Ed. 881; 31 C.J.S. Evidence § 50(1), p. 1021, and § 50(3), pp. 1032–1033. This has been applied in motions to dismiss. Although normally a motion to dismiss admits all well-pleaded facts, it does not admit facts which the court can judicially notice as not being correct, *Interstate Natural Gas Co. v. Southern California Gas Co.*, 9 Cir., 209 F.2d 380, 384; *Gulf Coast Western Oil Co. v. Trapp*, 10 Cir., 165 F.2d 343, 349; *Maniaci v. Warren*, D.C. Wis., 314 F.Supp. 853, 857; *Golaris v. Jewel Tea Co.*, D.C.Ill., 22 F.R.D. 16, 19." *Weber v. Johnston Fuel Liners, Inc.*, supra, 540 P.2d at 538–539.

To the extent that other cases may be in conflict with this rule, we would now disapprove *Demars v. Hickey*, 13 Wyo. 371, 80 P. 521, reh. denied 81 P. 705 (1905); *Sidlo, Simons, Day & Co. v. Phillips*, 48 Wyo. 390, 49 P.2d 243 (1935); and *Tibbals v. Graham*, 50 Wyo. 277, 61 P.2d 279, reh. denied 62 P.2d 285 (1936). See also *Amfac Mechanical Supply Co. v. Federer*, Wyo., 645 P.2d 73, 79 (1982), wherein this court, in analyzing prior inconsistent testimony in a case in which testimony had been retailored, said:

"* * * The courts will not allow parties to blow hot and cold in the same breath and in separate judicial proceedings, a party will not be allowed to maintain an inconsistent position."

It is not established in that opinion how the record in a totally separate case *and its evidence* came to be part of the Amfac record for appellate review.

The history of these two cases upon which the defendants now premise their motion to dismiss includes the following litigative panorama.

### III

### TEXAS WEST I

On June 1, 1981, Oil Patch entered into an agreement to construct a drilling rig for Texas West. Following construction problems, on October 18, 1982 Texas West started this litigative program by a complaint against Oil Patch, with one claim for replevin of the less than completed drilling rig, and a second claim for damages.

After supporting and opposing affidavits were filed, Oil Patch first responded by a motion to dismiss. At the same time, D.N. Fitzgerald, a guarantor on a bank loan obtained by Oil Patch from First Interstate Bank (present appellee) moved to intervene in claiming a security interest in the rig as

acquired when he honored the bank loan guarantee and received an assignment of chattel financing which First Interstate Bank had secured against the inventory of Oil Patch. Oil Patch filed an answer and a counterclaim, to which Texas West filed its reply, with a motion for appointment of a receiver which was never otherwise pursued.

The first dispositive action of the district court occurred on January 11, 1983, when the court ruled in favor of the defendant Oil Patch on the motion for replevin. Plaintiff Texas West then responded by filing a motion for change of judge, and the case was reassigned.

By May 6, 1983, plaintiff had filed its first motion to amend the complaint to add additional parties. Added by change in the caption were D.N. Fitzgerald and W.T. Harries, but the text and the prayer also alleged claims against Gordon Gibson on the basis of his status as a shareholder and member of the Board of Directors of Oil Patch. The pleading made separate claims against Harries and Fitzgerald for intentional interference with a written contract.

By concurrent pretrial memorandum it was indicated by caption omission that the amended complaint was not intended to include Gibson, but the memorandum then included Gibson in a discussion of the legal theories upon which recovery was sought. A further motion to amend was filed May 20, 1983 which clearly intended to include Gibson as a named defendant as well as another corporation situate in Texas. On the same day, plaintiff filed a request for arbitration to determine the issue of purchase price due on the purchase contract. Counsel for plaintiff obtained a setting for June 6, 1983 before the presiding judge on the arbitration request motion, but did not include either of the pending motions for leave to amend.

A pretrial order did not determine the amendment question, and a further amended complaint was filed June 10, 1983. By a decision letter of July 20, 1983 the trial court found that arbitration was required, but did not address amendments. After the parties commenced to dispute what was to be arbitrated, a stipulation was filed March 30, 1984, dated December 31, 1983,[1]

1. The stipulation for arbitration, apparently prepared by Oil Patch and signed by both counsel, stated in part:

"4. That the parties have agreed to submit all legal and factual issues in dispute between them in civil action no. 53952, limited only as set out herein, to the arbitration panel for resolution. * * *

\*   \*   \*   \*   \*   \*

"5. The parties hereto stipulate that any net monies found owing to Oil Patch of Wyoming shall be applied first in payment of the obligation securing the '812' drilling rig for which Texas West has contracted, which obligation is currently held by intervenor herein, D.N. Fitzgerald, and Texas West is authorized to make payment directly to the said D.N. Fitzgerald or his successor of any net amounts found owing Oil Patch of Wyoming, not exceeding the amount of the security agreement held by Fitzgerald. Nothing in this paragraph is to be taken or is given as an admission of the validity or status of any interest claimed by any of the parties to the litigation in the '812' drilling rig which is the subject of this action."

On March 30, 1983, Texas West presented a motion for entry of an order, to which a rather forceful motion in opposition was filed April 6, and, after hearing, the trial court said in a communication addressed to the attorneys for Texas West, Oil Patch, and Fitzgerald:

"Plaintiff contends basically that the award must be set aside as being not according to law, and must at least be modified since the award does not answer all the questions in the case. Plaintiff's brief essentially cites no legal authority for plaintiff's view of the scope and reviewability of arbitration proceedings. Defendant's brief argues in two directions (1) that plaintiff's motion should be dismissed as being entirely too broad and wholly lacking specificity, and (2) because the law of arbitration generally is said to support the upholding of an award in circumstances such as are said to have occurred here. Defendant has cited statute law and case law, some of it from Wyoming, which appeared to support defendant's view.

"The original contract establishing relationship between plaintiff and defendant was brief and broad as well as vague; it referred to arbitration in the most meager terms. Regardless of the foregoing the parties agreed to arbitration and so stipulated in the file March 30, 1984, referring to 'all legal and fact issues' and directing any net award to Oil Patch to go to the Fitzgerald lien. The award itself, signed by the three arbitrators and dated May 11, 1984, finds a number of facts and arrives at certain legal conclusions; it errs in amount of $100,000.00 in making a net award to Oil Patch of $567,000.00, the correct figure being

after which the parties were in disagreement about the stipulation and with the terms of an order for arbitration, which disagreement was then resolved on April 10, 1984 by a further decision letter.

Plaintiff then filed a motion for summary judgment on the issue of *subrogation* and a second motion for summary judgment on the basis that it was a buyer in the ordinary course of business. On April 30, 1984, plaintiff once more moved for leave to amend the complaint to remove the Texas corporation which had been subject to an earlier motion, and to generally change the text of the claim made against Fitzgerald.

The case was reassigned to District Judge Taylor, after the arbitration award was confirmed and a mathematical mistake corrected. Following that aborted effort to appeal on arbitration, the case was scheduled for pretrial on the remaining litigation between Fitzgerald and Texas West. In Texas West's pretrial memorandum, the following was included:

"The Plaintiffs move to amend their complaint, deleting certain parties and joining a new party, First Interstate Bank. The parties deleted have never been served. They are Tom Harries and Oil Patch of Odessa. The amended complaint brings a new action against Gordon Gibson, a director of Oil Patch of Wyoming, and President of the corporation, for involvement in allowing the lien

agreed all around to be $467,000.00; the award also calls for interest from a certain date at a specified rate and in general terms attorney's fees to be determined by Court. "The Court concludes that neither law nor logic demands that every possible question in the case be answered by the arbitration. It is entirely natural for a party displeased with an arbitration result to want the Court to determine that the award was outside permissible legal limits, yet I'm shown no law which requires that all aspects of an award be as a Court would have found them."
The record does not reveal that any order on the scope of arbitration was ever submitted by the parties or approved by the court, and the next event which occurred in regard to the arbitration was an application for an order confirming by counsel for Oil Patch which, after considerable briefing and hearings, resulted in a decision letter, an order to confirm, and a judgment favoring Oil Patch over Texas West, with the latter providing:

to come into being against property already subject to a contract to deliver, thereby rendering his own performance under that contract impossible, in violation of the requirement for good faith in the execution of all contracts executed under the Uniform Commercial Code, and in violation of any equitable principle against preferential treatment of corporate insiders, to the detriment of innocent creditors of the corporation, and for participating in an action, the result of which was to prevent the corporation from completing its contract, and for fraudulently conveying the security interest to the bank in fraud of creditors. The amended complaint joins a new party, First Interstate Bank, in an action for tortious interference with a contract, tortious interference with prospective contractual relations, and violation of the UCC provision requiring good faith in dealings governed by the UCC."

A motion to amend and joinder was filed May 6, 1985, attaching a copy of the amended complaint, which included First Interstate Bank and Gordon Gibson. That motion and the argument in the pretrial memorandum was considered at the pretrial conference held May 9. A separate order on the motions for leave to amend was not entered, and the only reference to the subject is found in the pretrial conference order:

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Defendant Oil Patch sales and Rentals of Wyoming, Inc. recover from Plaintiff Texas West Oil and Gas Corporation the sum of SIX HUNDRED SEVENTY–EIGHT THOUSAND THREE HUNDRED EIGHTY–SEVEN AND 17/100s DOLLARS ($678,387.17) together with its costs expended herein amounting to SIXTY–FIVE AND 18/100s DOLLARS ($65.18) for a total of SIX HUNDRED SEVENTY–EIGHT THOUSAND FOUR HUNDRED FIFTY–TWO AND 35/100s DOLLARS ($678,-452.35) and execution may issue thereon."
Texas West then attempted to appeal. The appeal was dismissed by this court as untimely, and no further involvement of Oil Patch exists as it appears all parties considered that, subject to appeal, the arbitration award had resolved the litigable issues between Texas West and Oil Patch in favor of Oil Patch, by entry of an order confirming arbitration award and entry of the resulting money judgment.

"The Plaintiff moved to amend their complaint to include a new action against Gordon Gibson and First Interstate Bank of Casper and to delete Tom Harries and Oil Patch of Odessa as Defendants. Gibson, Harries, and Oil Patch of Odessa have never been served. The Motion to Amend the Complaint was denied."

The pleading process of complaints, following the initial complaint of October 18, 1982, includes motions to amend complaint May 6, 1983, May 16, 1983, April 30, 1984, and finally the motion to amend or joinder, May 6, 1985. The caption of the case on the motion to amend on May 16, 1983, continued to carry Gordon Gibson as a defendant, and he was in fact once served, but the status of his addition as another defendant was not called up for hearing or considered and resolved by the trial court until pretrial conference order of May 13, 1985, following the conference of May 9. Consequently, between May 16, 1983 and May 9, 1985, Texas West took no action to secure trial court consideration of the addition of Gibson as an additional defendant. The first effort to add First Interstate Bank, however, occurred by motion to amend filed three days before the scheduled 1985 pretrial conference, and then, as noted, this lawsuit was filed the day of entry of the order denying the motion to amend to include the parties as additional defendants, and four days after the pretrial conference had been held where the matter had been discussed.

Interestingly enough, Texas West served a summons on Gordon Gibson apparently relating to the last amended complaint for which leave to amend had been denied. A motion to quash and for sanctions and attorney's fees was filed, and a hearing was scheduled for August 12, 1985. If anything happened, or if the hearing was held, it is not of record, and however arranged, the case went forward on the proceedings between Fitzgerald and Texas West, resulting in the $4,000,000 verdict, remittitur, and the appeal which was the subject matter of *Texas West I.* That appeal was taken on that stated basis of the remittitur, the order confirming arbitration, and the order denying the request for writ of replevin.

The briefs filed in this court did not reference an appeal from the denial of the writ of replevin, and consequently any issue was waived; nor was appeal pursued by Texas West from the denial of its motion for leave to amend. As a decision reflected by the pretrial conference order, there was a final order on leave to amend in the first case upon which an appeal issue existed but was not taken.

## IV

### TEXAS WEST II

Relating the present proceedings to Texas West I, we find that this complaint was filed May 13, 1985, which is the day that the pretrial order was entered on *Texas West I.* First Interstate Bank filed a motion to dismiss on a failure to state a claim, and Texas West again filed a motion to amend its complaint. Gibson filed a motion to dismiss on three bases, and also filed a motion for sanctions and attorney's fees. The proceedings then came before the same judge who had started Texas West I before being removed by peremptory challenge. After hearing, an order granting the motion was entered, stating in material part:

"2. That both the Complaint and the Amended Complaint fail to state a claim upon which relief can be granted against the Defendant First Interstate Bank of Casper and Gordon Gibson and an Order should be entered herein dismissing the Complaint and Amended Complaint as to the above-named Defendants."

Another rejected appeal followed, since disposition of the motion for sanctions had not occurred. After return to the trial court, the sanction motion was denied, and the present appeal brings the order sustaining the motions to dismiss to this court.[2]

2. The order of dismissal was entered September 3, 1985, or about six months after entry of an order of March 13, 1985 confirming the arbitration award, 13 days before commencement of the trial between Texas West and Fitzgerald, and 24 days before judgment was entered on the

We discern the following facts as judicially decided in this course of litigation: (1) Texas West did not pay what was due on the purchase price, and consequently Oil Patch did not breach the purchase contract by withholding release of the oil rig; (2) Oil Patch owes Texas West nothing as a refund for overpayment or otherwise; (3) Texas West owed a balance to Oil Patch of $678,387.17, with accruing interest at ten percent from March 13, 1985, which amount was assigned to Fitzgerald upon his payment under the guarantee to First Interstate Bank; (4) the replevin action was properly denied, determining that Texas West was not entitled to possession of the drilling rig without payment, and that payment of the balance due to the date of the trial court decision had not been tendered; and (5) Fitzgerald interfered with the contract between Oil Patch and Texas West by causing First Interstate Bank to obtain an assignment of rights that Oil Patch had against Texas West as a condition of the further extension of Fitzgerald's guarantee at a time when First Interstate Bank renewed its loan to Oil Patch.

Furthermore, we find that (1) after sorting through the entire sequence of amended complaints in *Texas West I,* and now the first amended complaint in *Texas West II,* Gordon Gibson is named as a defendant by virtue of his position as a director of Oil Patch; (2) First Interstate Bank is named as a defendant by virtue of taking chattel security financing of receivables of Oil Patch in the amount of the balance due from Oil Patch on two loans at a time of renewal of the indebtedness and as alleged, and is correct in acceptance of the assignment in exchange for the Fitzgerald agreement to double his contract of guarantee; and (3) the predicate for Texas West to have the right to possession was never alleged, since Oil Patch never was tendered

the balance due or the amount determined by arbitration to be due. Additionally, that controversy is resolved on liability between Texas West and Fitzgerald, and First Interstate Bank now has no security interest or money claim either from Texas West or in the drilling rig since tender and honor of the guarantee by Fitzgerald.

This case, devolving from the status of the granted motion to dismiss, evokes issues somewhat dissimilar between the defendants, Gibson and First Interstate Bank, and will be separately addressed.

## V

## GORDON GIBSON AS DEFENDANT

The complaint for claimed liability alleged:

"5. That at a time when there remained work to be done on the rig, with an actual cost of over 1.1 million, Oil Patch Sales and Rentals of Wyoming, by and through its directors, D.N. Fitzgerald and Gordon Gibson, gave a lien on the rig to the Defendant, First Interstate Bank of Casper, with the express understanding that it would be transferred back to the director, D.N. Fitzgerald, in exchange for his agreement to double his contract of guaranty, which was to put against the rig a debt greater than the maximum purchase price for which the corporation was contractually obligated to deliver.

\* \* \* \* \* \*

"11. That the actions of First Interstate Bank of Casper and Gordon Gibson violate the Good Faith Requirement imposed on all transactions governed by the Uniform Commercial Code requirement found at Wyoming Statute 34–21–122.

\* \* \* \* \* \*

verdict resulting from the trial. However, a final judgment was not entered in this case until April 3, 1986, after remand by this court following first appeal dismissal. Obviously, the trial court did not know whether Fitzgerald or Texas West would win when the order of dismissal was entered on September 3, 1985, or whether arbitration would be affirmed when ultimately appealed. The status of the parties as principals

in this proceeding was, however, determined to the extent of involvement in Texas West I on September 3, 1985 except as might be changed by subsequent appeal. As such, it is considered that the Texas West I record now in this court, is available for judicial notice and consideration of the efficacy of the entry of the present motion to dismiss.

"14. That the actions of the Defendants, in taking a security interest to advance their own interest at the express expense of an innocent party, constitute egregious misconduct sufficient to justify an award of punitive damages.

"WHEREFORE, the Plaintiff prays for damages against the Defendants, First Interstate Bank of Casper and Gordon Gibson, in the amount of 3.5 million, or the actual dollar loss suffered by the Plaintiff, if different than that amount, the avoidance of the security interest in the drilling rig being manufactured for Texas West, interest on the Plaintiff's 3.5 million dollar tender from the date the lien was imposed, and such other and further relief as the Court deems just and equitable, including attorney's fees, and for punitive damages."

The same allegations were included in the amended complaint filed 18 days later, with a modest change in the text of Paragraph 5.

### VI

### MUTUALITY REQUIRED FOR APPLICATION OF COLLATERAL ESTOPPEL

■ Since, as pleaded by plaintiff, Gibson acted as an agent by virtue of his status as a director of Oil Patch, the direct question for evaluation is whether the litigative success of Oil Patch against appellant Texas West now is available defensively to Gibson as a director of a corporation. No Wyoming case has addressed the posture to be adopted on the mutuality issue for application of res judicata, or more properly collateral estoppel, as either defensively or offensively determinative. The leading case was *Bernhard v. Bank of America National Trust & Savings Association*, 19 Cal.2d 807, 122 P.2d 892 (1942), more currently followed in the federal courts by *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The anticipated direction of this court is suggested by testimony judicial estoppel in *Amfac Mechani-*

*cal Supply Co. v. Federer*, supra, 645 P.2d 73; *Gray v. Fitzhugh*, Wyo., 576 P.2d 88 (1978); *Allen v. Allen*, Wyo., 550 P.2d 1137 (1976); and *C.L.S. v. C.L.J.*, Wyo., 693 P.2d 774 (1985), where the court found the litigant to be bound by the testimony in the earlier case, which principle is similar but not the same as decisional collateral estoppel, sometimes called issue preclusion. More specifically, the inquiry has been whether mutuality as denied since Bernhardt in many cases, is continued in this jurisdiction as a factor for application of the defensive or offensive preclusion by prior decision. Textwriters have found a minority of states, numbering nine, which have presently retained the mutuality test for res judicata or collateral estoppel, as compared to the federal system and most other states analysis. See Shreve, *Preclusion and Federal Choice of Law*, 64 Texas L. Rev. 1209, 1217 (1986), and Casad, *Intersystem Issue Preclusion and The Restatement (Second) of Judgments*, 66 Cornell L.Rev. 510 (1981). Cf. *Blair v. Bartelmay*, 151 Ill.App.3d 17, 104 Ill.Dec. 362, 502 N.E.2d 859 (1986), where the rule is stated but privity was found lacking between husband and wife under the circumstances of a fraud complaint.

The United States District Court, District of Wyoming, and the Tenth Circuit Court of Appeals have comprehensively guessed at the probable direction of Wyoming law and anticipatorily adopted the majority stance. *Ponderosa Development Corp. v. Bjordahl*, 787 F.2d 533 (10th Cir.1986); *Ponderosa Development v. Bjordahl*, 586 F.Supp. 877 (D.Wyo.1984); *Atchison v. State*, 763 F.2d 388 (10th Cir.1985); *Rust v. First National Bank of Pinedale*, 466 F.Supp. 135 (D.Wyo.1979).

The subject is comprehensively addressed in an Annotation in 31 A.L.R.3d 1044, and more than 20 law journal comments, of which writings by Casad, supra, 66 Cornell L.Rev. 510, Currie, *Civil Procedure: The Tempest Brews*, 53 Cal.L.Rev. 25 (1965), and a Note, *Collateral Estoppel of Nonparties*, 87 Harvard L. Rev. 1485 (1974), are frequently cited. See additionally in current literature, Carlisle, *Getting a*

*Full Bite of the Apple: When Should the Doctrine of Issue Preclusion Make an Administrative or Arbitral Determination Binding in a Court of Law?*, IV Fordham L.Rev. 63 (1986). The Restatement of Judgments Second, § 88 codifies the modern rule now clearly promulgated by the United States Supreme Court for federal courts in Blonder-Tongue Laboratories, and Parklane Hosiery. *Gerrard v. Larsen*, 517 F.2d 1127 (8th Cir.1975); *Brown v. Delayo*, 498 F.2d 1173 (10th Cir.1974); *Zdanok v. Glidden Co.*, 327 F.2d 944 (2d Cir.), cert. denied 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Butler v. Olshan*, 280 Ala. 181, 191 So.2d 7 (1966); *Toepper v. Cooker*, 150 Ill.App.3d 206, 103 Ill.Dec. 617, 501 N.E.2d 934 (1986), appeal denied 114 Ill.2d 558, 108 Ill.Dec. 426, 508 N.E.2d 737 (1987); *B.R. DeWitt, Inc. v. Hall*, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).

## VII

### OIL PATCH WON, AND ITS DIRECTOR IS BENEFITED BY COLLATERAL ESTOPPEL

It is clearly stated and firmly related that the benefit of collateral estoppel and res judicata are available either to the principal or agent in defense of the second lawsuit, based on the failed first suit against the other party by the same third-party plaintiff. 46 Am.Jur.2d Judgments, § 570. Gibson as a director in Oil Patch is now protected by the favorable judgment received by Oil Patch on the Texas West I breach litigation, and all aspects of that case that could therein have been tried whether or not actually pursued. *Lane Co. v. Busch Development*, Wyo., 662 P.2d 419 (1983).

3. Furthermore, we have real question, through the menagerie of pleadings in the first proceeding, whether Gibson was not sufficiently invoked as a party in the first suit so that the present proceeding is subject to the application of conventional res judicata in his favor.

4. Actually, Gibson was the president, significant stockholder, and, with Fitzgerald, also a guarantor of the bank loan. It is possible that if he had been pursued in that status in Texas West I,

Dispositively, we conclude that since Oil Patch won the judgment and litigative contest in Texas West I, its director cannot be held liable in *Texas West II* to the earlier losing litigant.[3] In that Texas West lost and Oil Patch as the corporation won, the creditor is established to be Oil Patch, not Texas West. Liability of the director to the losing litigant who contested with the corporation creates an interesting but novel and unsupported theory of liability. 46 Am.Jur.2d Judgments, § 570, supra. See specific discussion that tortious interference cannot lie against a corporate agent wherein the conflict existed between his employer corporation and the plaintiff. The required third party is lacking. *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.*, 360 Pa.Super. 72, 519 A.2d 997 (1987).

Finally, the pleadings and briefs lack definition why Gibson could be liable *under the language used* as "a director" of the bargaining party pursuant to an intentional-interference complaint essentially related to the loan transaction.[4] *Hogan v. Postin*, Wyo., 695 P.2d 1042 (1985); 18B Am.Jur.2d Corporations, § 1829.

From this complex and convoluted status of events, we would conclude that the trial court was correct in granting the motion to dismiss as to Gibson, wherein he is sued as a director of Oil Patch, since, as a matter of law, Oil Patch committed no action upon which a present claim by Texas West can be maintained. Essentially, appellees are correct in their contention that this continued course of litigation embraces an effort by Texas West to set aside an unfavorable arbitration award. Representative liability cannot be impressed if the principal is not liable.

a viable claim might have been pleaded. His status as a director certainly does not invoke the stature otherwise involved in his position as a managing officer, shareholder and guarantor. However, Texas West has fished in these pleading waters long enough, and the litigation deserves a conclusion. See majority and dissenting opinions in *Texas West v. Fitzgerald*, supra, 726 P.2d 1056.

## VIII

### FIRST INTERSTATE BANK—JUDICIAL ESTOPPEL

The more substantive decision is whether a lender who takes inventory chattel financing security accrues a risk of intentional interference by requesting and securing that secured status for its loans.

■ A threshold issue is reached whether the first proceeding constituted collateral estoppel or res judicata in this proceeding where Texas West now sues the lender after an unfavorable decision against the business participant and a favorable decision against a guarantor who assumes the real-party-in-interest status in regard to holding the collateral and settling the bank debt by payment and assignment. We consider this aspect to be dispositive for affirmation. Judicial estoppel denies the right to take inconsistent positions in subsequent litigation. *Amfac Mechanical Supply Co. v. Federer,* supra, 645 P.2d 73; *Gray v. Fitzhugh,* supra, 576 P.2d 88; and *Allen v. Allen,* supra, 550 P.2d 1137. Collateral estoppel and res judicata accommodated conclusion against the same plaintiff where the issues have been judicially determined both to the parties and to their privies in any other action in the same or different court of competent jurisdiction on the same issues. *C.L.S. v. C.L.J.,* supra, 693 P.2d 774; 46 Am.Jur.2d Judgment, § 394.

Any analysis has to start with the status that Oil Patch has a claim against Texas West of $678,452.35, with interest at the legal rate from March 13, 1985, which was assigned to Fitzgerald as a balance due on the rig construction, and Texas West has a damage claim in a presently indeterminate amount against Fitzgerald for intentional interference in requesting that First Interstate Bank obtain collateral security on the inventory for assignment in conjunction with collection on the guarantee.

We resolve the case and affirm the decision of the trial court by concluding that *at*

*this time,* after Texas West has obtained judgment against the assignee guarantor, res judicata and collateral estoppel preclude another suit against the lender assignor who neither holds the security nor retains any claim to funds due from Texas West under the arbitration decision and the prior judgment.

The ulterior purposes established in the prior case as tortious conduct of Fitzgerald do not create a cause of action against First Interstate Bank from conduct in taking chattel financing for loan balances due. Fitzgerald was the party at interest by virtue of his guarantee as first made and subsequently honored, and any conduct of First Interstate Bank was only that which was pursued as lender upon the guarantor's request.[5]

At this time, Fitzgerald and Texas West should settle remaining questions between themselves in the scheduled jury trial, and we conclude that the aspect of this expansive litigation now here on appeal was properly ended by the order of dismissal entered by the trial court.

Affirmed.

THOMAS, Justice, dissenting.

I must dissent from the disposition of the issues in this case. The majority decision does not fit my view in *Texas West Oil and Gas Corporation v. Fitzgerald,* Wyo., 726 P.2d 1056 (1986); it does not fit the parties in this litigation; it does not fit the usual rules with respect to issue preclusion under the doctrine of collateral estoppel; and it does not fit our Wyoming cases. I would reverse the judgment of the district court granting the motion to dismiss for failure to state a claim.

While it was clear to me in *Texas West Oil and Gas Corporation v. Fitzgerald,* supra, that the approved result of the arbitration proceeding made it impossible for Fitzgerald to have committed the tort of intentional interference with the contract between Texas West Oil and Gas Corpora-

---

**5.** For confusion on the subject of intentional interference, see *Gross v. Lowder Realty Better*

*Homes and Gardens,* Ala., 494 So.2d 590 (1986).

tion and Oil Patch Sales and Rentals of Wyoming, Inc., I could conclude, and did, that Fitzgerald still might be liable for damages for intentional interference with a contractual expectancy. I concurred in the finding that Fitzgerald had committed the tort of wrongful interference with that contractual expectancy.

The Amended Complaint in this case asserts wrongful interference with the contract between Texas West Oil and Gas Corporation and Oil Patch Sales and Rentals of Wyoming, Inc., but the Amended Complaint also alleges:

"11. That the taking of the lien in the drilling rig prevented the consummation of prospective contractual relations, in that the parties, after the loss of the draw works, considered options which included selling the rig to third parties, and that proposed sales were in the process of being completed, which had every likelihood of success, and they were frustrated by the imposition of the lien.

\* \* \* \* \* \*

"16. That First Interstate Bank also knew that Texas West and Oil Patch were negotiating for the sale of the rig to third parties, and that the placing of the lien upon the rig would have the substantial likelihood of frustrating those prospective contractual relations, because they were altered to require cash payment of a $500,000.00 lien, which payment did not contribute to finishing the incomplete drilling rig, and which non-productive cost the bank knew would frustrate the ability of the parties to dispose of the rig to a third party under existing market conditions."

I am satisfied that the complaint adequately alleges facts to assert a claim against First Interstate Bank of Casper, N.A., and Gordon Gibson for wrongful interference with a contractual expectancy.

In my judgment, the sufficiency of the Amended Complaint cannot be abrogated by the application of the doctrines of res judicata or collateral estoppel. The majority focuses upon relationships which are not significant without considering the critical relationship in this case. It is true that the Amended Complaint alleges that Oil Patch Sales and Rentals of Wyoming, acting through its directors, Fitzgerald and Gibson, gave a lien to the First Interstate Bank of Casper, N.A., on the uncompleted rig. Gibson's and Fitzgerald's respective roles as corporate directors, however, simply afforded opportunity to commit the alleged tort of wrongful interference. We do know from the record in the prior case that Gordon Gibson also was a guarantor of the indebtedness of Oil Patch Sales and Rentals of Wyoming, Inc., and he had the same self interest that D.N. Fitzgerald had in furnishing additional security to the First Interstate Bank of Casper, N.A., on the corporate indebtedness. The bank had a separate interest of its own which was served by increasing its security for its loan. Consequently, the fallacy of the majority position is its reliance upon the relationship of Gibson to Oil Patch Sales and Rentals of Wyoming, Inc. as a director and the relationship of First Interstate Bank of Casper, N.A., to Fitzgerald as an assignor of the security interest to Fitzgerald in concluding that the doctrine of collateral estoppel relieves them from liability because *Texas West Oil and Gas Corporation v. Fitzgerald*, supra, demonstrated no breach of the contract by Oil Patch.

Gordon Gibson was acting for himself and advancing his individual interests. In obtaining an additional lien on the uncompleted rig, the First Interstate Bank of Casper, N.A., was enhancing its own interests. In the context of the alleged tort, the critical relationship could only be that of joint tortfeasors as it might exist between Gibson, Fitzgerald and the bank. Concepts of principal and agent as between a corporation and one of its directors, or assignor and assignee as between a bank and a guarantor, have nothing to do with this case. The relationship of one joint tortfeasor to another, without more, does not involve privity in any way that should invoke the concepts of issue or claim preclusion relied upon by the majority opinion.

This is demonstrated best by noting that one of the policy justifications for the doctrines of issue preclusion is that they lead

to consistent litigative results. The result in this case is inconsistent with the result in *Texas West Oil and Gas Corporation v. Fitzgerald*, supra. To be consistent, the doctrine of collateral estopped should have been applied in aid of the plaintiffs' case which would result in a judgment against Gibson as a matter of law since his status is identical to that of Fitzgerald.

Instead of alleging that Gibson's liability would flow from a principal and agency relationship or alleging that the First Interstate Bank of Casper, N.A., was liable as an assignor, the Amended Complaint alleges:

"18. That the actions of the Defendants, in taking a security interest to advance their own interests at the express expense of an innocent party, constitute egregious misconduct sufficient to justify an award of punitive damages, and these actions were taken for the improper motive of injuring an innocent third party, Texas West, by interfering with these pre-existing contractual relations."

This is not a particularly artful way of alleging that Gibson and the bank wrongfully interfered with a contractual expectancy, but it is apparent that the plaintiffs' theory was that Gibson's action was taken for himself not on behalf of Oil Patch Sales and Rentals of Wyoming, Inc.

Given the circumstances and the law, as I understand both, it is a mystery to me how the doctrine of issue preclusion may have the effect of justifying the dismissal of this Amended Complaint for failure to state a claim. We have classified wrongful interference with a contractual expectancy as a tort. If several persons commit that tort, each may become liable for the same loss. The applicable rule from Restatement (Second) of Judgments § 49 (1982) reads as follows:

"Judgment Against One of Several Persons Liable for the Same Loss

"A judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor."

The thrust of this rule is that the judgment against D.N. Fitzgerald does not terminate a claim that Texas West Oil and Gas Corporation may have against Gordon Gibson or the First Interstate Bank of Casper, N.A., for the same loss.

While I have no quarrel with the right of this court to judicially notice the prior litigation for purposes of the doctrines of issue preclusion, the rules of issue preclusion invoked by the majority opinion are inapposite. The First Interstate Bank of Casper, N.A., is not sued as an assignor. It is sued for its own wrongful conduct in participating in the alleged interference with the contractual expectancy. Similarly, Gibson is not sued as an agent of Oil Patch Sales and Rentals of Wyoming, Inc., he is sued because, in his situation as a director, he acted contrary to the interests of Oil Patch and in accord with his individual interest in providing additional security for a debt which he had guaranteed. If that conduct resulted in wrongful interference with the contractual expectancy, both Gordon Gibson and First Interstate Bank of Casper, N.A., are subject to independent liability. Neither is protected from liability by the doctrine of res judicata or the doctrine of collateral estoppel. In this instance, the rule articulated in *Weber v. Johnston Fuel Liners, Inc.*, Wyo., 540 P.2d 535 (1975), simply does not apply.

We must keep in mind that:

"According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. *Johnson v. Aetna Casualty & Surety Co. of Hartford*, Wyo., 608 P.2d 1299 (1980). In considering such a motion, the 'facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs.' *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733, 734 (1979). Dismissal is a drastic remedy, and is sparingly granted. *Harris v. Grizzle*, Wyo., 599 P.2d 580 (1979)." *Mostert v. CBL & Associates, et al.*, Wyo., 741 P.2d 1090, 1092 (1987).

The correct disposition of this appeal would be to reverse the judgment of the trial court and remand the case for further proceedings.

MACY, Justice, dissenting.

I dissent.

There is nothing in the record on appeal to indicate that the trial court took judicial notice of anything upon which it could consider res judicata and collateral estoppel as a basis for granting the motion to dismiss. The court certainly could not take judicial notice of the judgment entered on the verdict in Texas West I as the order granting the motion was entered before the judgment.

I agree that a motion to dismiss may be treated as one for summary judgment when matters outside the pleadings are presented to and are not excluded by the court; however, there is nothing in the record which indicates that such was done or that the motion was treated as a motion for summary judgment.

It was error to grant the motion, and it is improper for this Court to now attempt to correct that error by taking judicial notice of a judgment which was not in existence at that time.