2007 WY 184

**WEST AMERICA HOUSING CORPORATION, a Wyoming Corporation, Jeanne L. Joelson, Sheena Joelson/Shoopman, Bobbie Charles Craver, Appellants (Defendants),**

v.

**Donald PEARSON, a/k/a Donald E. Pearson, Appellee (Plaintiff).**

No. S–07–0068.

Supreme Court of Wyoming.

Nov. 16, 2007.

Representing Appellants: Mary Elizabeth Galvan, Laramie, Wyoming.

Representing Appellee: Don W. Riske and Sean C. Chambers of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]  Appellants, West America Housing Corp. (WAHC), Jeanne L. Joelson (Joelson), Sheena Joelson/Shoopman (Shoopman), and Bobbie Charles Craver (Craver) challenge a January 21, 2007 order of the district court which found that: (1) A quitclaim deed from Appellee, Donald E. Pearson (Pearson) to Larry D. Oltman (Oltman) (Oltman is Jeanne Joelson's brother) was void for lack of consideration; and (2) that subsequent quitclaim deeds from Oltman to WAHC, and from WAHC to WAHC and Craver, were void because they were fraudulent conveyances. It helps to clarify what follows, to note here that Joelson, Shoopman (daughter of Joelson), Craver, and Oltman purported to own WAHC. Having voided all three of the above-described deeds, the district court's order also quieted title to the disputed property in Pearson, but did not award him any monetary damages.  Appellants claim that the district court's order is erroneous for several reasons.  We will affirm.

## ISSUES

[¶ 2]  Appellants raise these issues:

A.  Whether a fully executed quitclaim deed, acknowledging payment of consideration and containing no reservation of rights may be set aside as void for lack of consideration under the doctrines of merger and estoppel by deed.

B.  Whether the trial court's setting aside the quitclaim deed from Pearson to Oltman was plain error, requiring reversal to give effect to the doctrines of merger and estoppel by deed.

C.  Whether conveyance of the subject property to a party to the deed, by quitclaim deed, was sufficient to confer title in the property to the grantee, who could then dispose of the property by quitclaim deed to a subsequent grantee.

Pearson articulates these issues:

I.  Whether the doctrines of merger and estoppel by deed should be considered by this Court on appellate review since they were not raised in the District Court.

II.  Whether a fully executed quitclaim deed may be set aside as void for lack of consideration under the doctrines of merger and estoppel by deed.

III.  Whether the District Court erred as a matter of law in setting aside as void the Oltman to "WAHC Deed" and from "WAHC to WAHC and Craver Deed" as fraudulent conveyances.

## FACTS AND PROCEEDINGS

[¶ 3]  Pearson initially filed this suit in the district court on September 13, 2004, and then filed an amended complaint on April 29, 2005.  In his complaint, Pearson averred that he acquired the subject property (Tract 1, Read Tracts, Laramie County, Wyoming-hereafter the "Wrangler Road Property") by warranty deed on August 9, 2002.  That deed was recorded on August 15, 2002.  Pearson made a down payment of $75,755.23 on the property.  He also took out a mortgage on that property in the amount of $279,200.00. About these two items there is no dispute. It is clear from the proceedings in this case that Pearson expected Joelson, Craver, and/or WAHC to repay him for the down payment he made on that property, but that they never did so.  Joelson admitted that she (and WAHC) had tried to refinance the property to get Pearson off the mortgage, but had been unsuccessful in doing so.

[¶ 4]  At trial Pearson testified in his own behalf.  Pearson was 84 years of age at that time (November 6, 2006), and his testimony was not always as coherent as might be desired.  However, he did relate that he knew Joelson and that she asked him to purchase the Wrangler Road Property in her behalf.  The record does not reflect why he did this at her request, except for Joelson's explanation that he did it for the income tax deduction for the mortgage interest paid. Pearson denied having a long-term working

relationship with Joelson in the real estate business. Joelson, however, contended that they had done business deals together for four or five years and had known each other for a long time, including that Pearson had once indicated he wanted to marry her. Joelson explained that she asked Pearson to work with her with respect to the Wrangler Road Property because she was looking for a home in a drier climate for her brother, Larry D. Oltman. Oltman had a lung ailment and lived in Minnesota. Joelson testified that she obtained the keys to the residential property directly from the previous owners, after Pearson made the purchase. Although the record is not crystal clear in this regard either, Joelson testified that WAHC made all the mortgage payments (which included the taxes), as well as the premiums for the insurance coverage, on the Wrangler Road Property. Apparently, Joelson has resided on that property since the time of its purchase (Joelson testified that Oltman had a stroke and never made it out to Wyoming).

[¶ 5] Joelson admitted that Pearson was not paid the $75,755.23 at the time the quitclaim deed to Oltman was executed (as is recited in that deed), but she did assert that, on a date she could not remember, she repaid Pearson for the $75,755.23 down payment he had made in her behalf by delivering to him that amount of cash, which she carried in a shoebox, to his room at an assisted living facility. Craver became involved in this matter because he claimed to have provided Joelson with $24,000.00 in hundred dollar bills (from the sale of a vintage Camaro automobile), and so he wanted an interest in the Wrangler Road Property to protect his "investment." His $24,000.00 was included in the "shoebox" payment. Craver recorded the quitclaim deed from Pearson to Oltman because he was told to do so by Oltman or Joelson. Craver was given an opportunity to present some documentary evidence to support his story, but he did not do so. Joelson

had no receipts or other documentation of the cash payment (her share of the repayment came from cash she kept around the house, so there was no withdrawal slip or other documentation). The district court stated on the record that he found Joelson's testimony to be "wildly unbelievable" and likely "perjury." Craver did not appear at the trial, nor did Shoopman. The record was left open for Craver to supplement the record before the district court, but he did not do so.

[¶ 6] On May 14, 2004, a quitclaim deed was recorded in Laramie County, probably by Craver. That deed transferred ownership of the Wrangler Road Property to Oltman by quitclaim deed and indicated that Pearson had received $75,755.23 ("in hand paid") as consideration for that transaction. Pearson denied ever receiving any money from anyone involved in this case and did not recognize the quitclaim deed as something he had done.[1]

[¶ 7] On October 7, 2003, Oltman executed and delivered a quitclaim deed for the subject property to WAHC. This deed was recorded on February 11, 2005. In turn, on February 11, 2005, WAHC executed and delivered a quitclaim deed to the subject property to WAHC and Craver. That deed was recorded on that same date. Eventually, Oltman conceded the following allegations made in Pearson's complaint:

> 3.2 Defendant Larry Oltman, by and through his sister and agent, Jeannie Joelson, represented to [Pearson] that the Defendants would pay to [Pearson] the sum of Seventy Five thousand Seven Hundred Fifty–Five Dollars and twenty three cents ($75,755.23) and assume and pay the mortgage for the remainder of the purchase price if [Pearson] would purchase the subject property, pay the down payment of Seventy Five thousand Seven Hundred Fifty–Five Dollars and twenty three cents

---

1. It would be more accurate to say that Pearson's testimony was equivocal about whose handwriting appeared in the blanks of the quitclaim deed form. Pearson conceded that it looked like it could be his printing in the blanks, and part of the signature looked like his, but taken as a whole, his testimony indicated that he did not recognize the deed, that he did not complete or sign it, and he most certainly did not receive the consideration that the deed indicated was delivered to him at signing. He also said he would not have signed such a deed without first being paid.

($75,755.23), execute the Mortgage and then convey the Subject Property to Defendant Oltman.

. . . .

5.3 Defendants assured [Pearson] that they would not record such deed until they had paid the down payment to [Pearson] and had assumed and paid the Mortgage obligation.

. . . .

5.5 The recording of such Quitclaim deed by Defendants was a fraudulent conveyance made by Defendants for the specific purpose of defrauding [Pearson]. [Vol. I, 232, 90–91]

As a result, Oltman was dismissed from this litigation.

[¶ 8] Pearson alleged that no consideration was paid to him, and that the quitclaim deed to Oltman (to the extent it was actually authentic) should be void for lack of consideration. Pearson also asked the district court to quiet title to the property in him and to require the occupants to pay any damages due to him. Pearson further asserted that intermediate transactions between Oltman, WAHC, and Craver constituted fraud. Pearson also contended that the transactions described above unjustly enriched the Appellants and the Appellants should have to disgorge any and all profits derived from the series of transactions described above. Finally, Pearson contended that the latter two transactions described above were fraudulent conveyances prohibited by Wyo. Stat. Ann. § 34–14–108 (Lexis-Nexis 2005).

## STANDARD OF REVIEW

■ [¶ 9] When a matter has been tried before the district court without a jury, our review of the court's findings of fact is under the clearly erroneous standard. Conclusions of law are reviewed *de novo*. *Kimble v. Ellis*, 2004 WY 161, ¶ 7, 101 P.3d 950, 953 (Wyo.2004).

## DISCUSSION

■ [¶ 10] The issues raised in this appeal were not addressed to the district court in the proceedings below:

We have held that we will not consider issues that were not "raised below in **any meaningful manner.**" *Beaugureau v. State*, 2002 WY 160, ¶ 11, 56 P.3d 626, 631 (Wyo.2002) (emphasis added). "It is a basic premise of appellate practice that to preserve an issue for appeal, that issue must be called to the attention of the trial court in a **clear manner.**" *Elder v. Jones*, 608 P.2d 654, 660 (Wyo.1980) (emphasis added).

*Yates v. Yates*, 2003 WY 161, ¶ 15, 81 P.3d 184, 189 (Wyo.2003).

■ [¶ 11] Appellants assert that the district court committed plain error because the principles of merger and estoppel by deed mandate reversal of the district court's order. The well known elements of plain error are: (1) The record clearly and unequivocally reflects the facts complained of; (2) the facts demonstrate a transgression of a clear rule of law; (3) the error affects a substantial right of the appellant; and (4) the appellant has been materially prejudiced by the violation. *Nish v. Schaefer*, 2006 WY 85, ¶ 18, 138 P.3d 1134, 1141 (Wyo.2006).

[¶ 12] Appellants assert that the doctrine of "merger" precludes the district court from concluding that there was no consideration paid Pearson for the quitclaim deed because the quitclaim deed acknowledges that he received the consideration. In *Rehnberg v. Hirshberg*, 2003 WY 21, ¶ 13, 64 P.3d 115, 119 (Wyo.2003) we noted:

A contract for the sale of realty is executory until closing, at which time the contract has been executed, it merges with the deed, and it is no longer separately enforceable. *Richardson v. Hardin*, 5 P.3d 793, 798 (Wyo.2000); *40 North Corp. v. Morrell*, 964 P.2d 423, 426 (Wyo.1998); *Bakken v. Price*, 613 P.2d 1222, 1227 (Wyo. 1980). Thereafter, the rights and obligations of the parties are controlled by the deed. *Bakken*, 613 P.2d at 1227. An exception to merger, called the "collateral obligations rule," provides that contractual obligations that are collateral to the transaction survive closing and may be enforced under the contract. *Richardson*, 5 P.3d at 799; *American Nat. Self Storage, Inc. v.*

*Lopez–Aguiar,* 521 So.2d 303, 305 (Fla. App.1988); and Lawrence Berger, Merger by Deed–What Provisions of a Contract for the Sale of Land Survive the Closing?, 21 Real Estate L.J. 22, 24 (1992). A collateral obligation is one that is not "deed-related." Lawrence Berger, *supra,* 21 Real Estate L.J. at 32. Deed-related provisions are those concerning " 'title, possession [and] quantities or emblements of the land....' " *Bakken,* 613 P.2d at 1232 (McClintock, J., concurring in part and dissenting in part) (quoting *Chavez v. Gomez,* 77 N.M. 341, 423 P.2d 31, 33 (1967)).

[¶ 13] The important role the above-stated doctrine plays in contract law generally, and in real estate transactions in particular, cannot be overstated, and we do not dilute it here by concluding that we will not consider the Appellants' contentions in that regard under the plain error rule. The evidence is at best equivocal that Pearson actually signed the quitclaim deed to Oltman. That deed was recorded by someone who was not a party to the deed. The beneficiary of the deed agreed that no consideration was paid to Pearson, and the only evidence to support the element of consideration was Joelson's "wildly unbelievable" tale of delivering the consideration to Pearson on an unknown date, in the form of cash in a shoe box, for which she obtained no receipt. It was not plain error for the district court to conclude that the deed at issue was void for lack of consideration, despite the language on the face of the deed. To the extent that that decision involved findings of fact, they are not clearly erroneous, and the district court's application of the law is not in error, given these unusual circumstances.

[¶ 14] With respect to estoppel by deed we have said:

Estoppel by deed generally is based upon the covenants contained in a warranty deed, and does not, therefore, arise from a conveyance via quitclaim. 3 *American Law of Property, supra,* § 15.19; 28 Am.Jur.2d, supra, § 6; 4 Herbert Thorndike Tiffany, *The Law of Real Property*

§ 1231 (3d ed.1975); 26A C.J.S. *Deeds* § 261 (2001). This rule is not absolute, however, and despite being a quitclaim in form, a conveyance may give rise to estoppel by deed when it "contains language showing that the grantor intended to convey and the grantee expected to acquire a particular estate." 28 Am.Jur.2d, *supra,* § 6; 4 *The Law of Real Property,* supra, §§ 1230–31. Alternatively stated, a "quitclaim deed is one which purports to convey, and is understood to convey, nothing more than the interest or estate in the property described of which the grantor is seized or possessed, if any, at the time, rather than the property itself." 26A C.J.S., *supra,* § 17 (footnote omitted). In that sense, a document that purports to convey a particular interest simply is not a quitclaim deed. The nature of a particular conveyance is determined by the intent of the parties:

*Kennedy Oil v. Lance Oil & Gas Company, Inc.,* 2006 WY 9, ¶ 29, 126 P.3d 875, 884 (Wyo.2006).

[¶ 15] To avoid being redundant, we reject this claim of plain error for the same reasons we rejected the one immediately above, because it was not argued to the trial court and because the plain error rule does not mandate that we do consider it.

[¶ 16] The Appellants' other arguments are dependent upon the threshold issues discussed above, which we have rejected. Since we affirm the district court's conclusion that the initial quitclaim deed was void, it flows virtually without need for discussion that the succeeding deeds were also void. However, the district court determined that they were fraudulent conveyances under Wyo. Stat. Ann. § 34–14–108 (LexisNexis 2005),[2] which provided: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both

---

**2.** That statute was repealed in 2006 and is now found at Wyo. Stat. Ann. §§ 34–14–201 through

34–14–212 (LexisNexis 2007).

present and future creditors." The record reflects that Oltman conceded that the second and third quitclaim deeds were recorded with intent to defraud Pearson. The district court's findings in this regard are not clearly erroneous, and its application of the law is not in error. The order setting aside those conveyances and declaring them void is not erroneous.

## CONCLUSION

[¶ 17] The judgment of the district court is affirmed.