2008 WY 62

**WEST AMERICA HOUSING CORPORATION, a Wyoming corporation, and Jeanne Joelson, Appellants (Plaintiffs),**

v.

**VANDON, INC., a Wyoming corporation, and Donald Pearson, also known as Donald E. Pearson, Appellees (Defendants).**

No. S–07–0071.

Supreme Court of Wyoming.

June 5, 2008.

Representing Appellants: Lynn Boak, Cheyenne, Wyoming.

Representing Appellees: William W. Harden, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] West America Housing Corporation and its president Jeanne Joelson (hereinafter referred to as "West America" unless identification of a specific party is necessary) filed suit after Vandon, Inc. declared two contracts for deed it had executed with West America to be forfeited. After a bench trial, the district court entered judgment in favor of Vandon and its president Donald Pearson (hereinafter referred to as "Vandon" unless identification of a specific party is necessary). West America appealed, claiming that the trial was procedurally unfair.

[¶ 2] We affirm.

## ISSUES

[¶ 3] West America presents the following issues on appeal:

I. Whether the attempt at impeachment pursuant to Wyoming Rules of Evidence, Rule 609, fatally prejudiced the Plaintiff Jeanne Joelson[.]

II. Whether the testimony of Donald Pearson was probative of any material facts or issues in the case and wheth-

er the trial court erred in receiving any documentary evidence based on his testimony.

Vandon restates the issues as:

I. Whether the district court's findings of fact[ ] and conclusions of law were clearly erroneous when it found against appellants and for appellees.

II. Whether the record reflects any prejudice whatsoever against appellant[s] warranting a re-hearing of the matter[.]

III. Whether or not appellant[s'] appeal is frivolous and sanctions should issue[.]

## FACTS

[¶ 4] On January 18, 2001, Vandon, as seller, and West America, as buyer, entered into a contract for deed on property in Converse County, Wyoming. West America provided a small down payment and agreed to pay Vandon $298.01 per month in principal and interest, plus a "property tax installment" of $55.00 per month. West America also agreed to "maintain sufficient Hazard Insurance to cover the Seller's interest in the property with a loss payable clause in the Seller's name." The contract stated that, in the event of a default, Vandon would give notice and West America would have 30 days to cure. If West America failed to cure the default, the contract could be declared to be forfeited and Vandon could take immediate possession of the property. In the event of forfeiture, West America's principal and interest payments would "be considered as rent paid for the use of the said property."

[¶ 5] On March 9, 2002, Vandon and West America entered into a similar contract for deed on property located in Natrona County, Wyoming. That contract called for monthly principal and interest payments of $758.20 "plus an amount of One Hundred, Five dollars per month to cover the existing cost of ha[z]ard insurance and the property taxes as they are levied by th[e] Natrona County Assessors Office." The contract also recognized that the costs of insurance and taxes could fluctuate on a periodic basis.

[¶ 6] Paragraph 3a of the Natrona County contract pertained to hazard insurance and taxes and was more detailed than the Converse County contract:

(3a) The Buyer agrees to maintain sufficient hazard insurance to cover the Seller[']s interest with a loss payable clause in the Seller[']s name. After the current hazard insurance becomes due and payable, the Seller will pay the additional costs of insurance out of the funds which will begin to accumulate with the first payment on the outstanding indebtedness, and the Seller will also pay the property taxes as they become due from the above mentioned amount of ONE HUNDRED and FIVE DOLLARS ($105.00) per month to be added to the amount of the Principal and Interest Payment.

The default provisions were similar to those contained in the Converse County contract. Both contracts also stated that Vandon's acceptance of payments from West America different from the contract terms would "in no way alter the terms of the contract as to the forfeiture herein mentioned."

[¶ 7] On June 15, 2005, Vandon's attorney sent notices to West America stating that the Converse County and Natrona County contracts were in default. The notice pertaining to the Converse County contract identified the specific instances of default as:

1. [T]he additional amount of $55.00 per month to cover the existing cost of property tax has not been timely made, and there is currently due and owing $1,323.07. (See Contract Re–Cap).

2. Failure to maintain hazard insurance on said property pursuant to paragraph (3a).

The "Contract Re-cap" stated:

I. Taxes: Required payments for taxes is $55.00 per month, times 12 months, or a total of $660.00 per year. Buyer is credited for payment of $271.93 in 2003, leaving an unpaid balance for taxes in the amount of $388.07. No payments were made for taxes pursuant to the contract in 2004 or 2005 for a total of $935.00.

II. Pursuant to paragraph (3a) of the contract, Buyer is to maintain hazard insurance with Seller named on the loss payable clause, and this was not done for any years.

Vandon demanded payment and an insurance binder showing it as a named insured in the loss payable clause on or before July 15, 2005.

[¶ 8] The default notice on the Natrona County property stated that West America had failed to pay the $105 per month amount to cover insurance and property taxes and "there is currently due and owing $3,146.74." The "Contract Re–Cap" stated that Vandon had calculated the amount due by multiplying the $105.00 monthly tax payment by the term of the contract through the end of May 2005, and giving West America credit for taxes paid directly to the county treasurer. Vandon again demanded payment on or before July 15, 2005.

[¶ 9] On July 12, 2005, counsel for West America replied to the notices of default and tendered a check in the amount of $724.81 for payment of the taxes on the Natrona County property and a check in the amount of $559.79 for payment of the taxes on the Converse County property. The letter accompanying the checks also indicated that "a copy of the proof of insurance and proof of taxes on both properties" was enclosed. Vandon rejected the tendered payments as cure for the defaults on the two contracts and demanded that West America vacate the properties.

[¶ 10] On September 8, 2005, the Natrona County Circuit Court signed a writ of restitution restoring possession of the Natrona County property to Vandon. On September 12, 2005, West America filed a "Complaint for Declaratory Judgment, Injunction, Breach of Contract, Unjust Enrichment, Trespass and Intentional Infliction of Emotional Distress." Vandon apparently counterclaimed to have title to the properties quieted to it.

[¶ 11] The district court conducted a bench trial on February 5 and 6, 2007. At the conclusion of the trial, the court entered oral findings of fact and conclusions of law in

favor of Vandon. After a written order was filed, West America appealed.

## DISCUSSION

### 1. Impeachment Evidence

 [¶ 12] West America does not challenge the district court's findings of fact. Instead, in its first issue, it claims it was prejudiced when the district court heard evidence about felony charges against Ms. Joelson in Arizona. The district court's decisions on the admissibility of evidence, including rulings regarding the admissibility of convictions to impeach a witness's credibility, are reviewed for abuse of discretion. *See generally, Miller v. State,* 2003 WY 55, ¶¶ 10, 12–16, 67 P.3d 1191, 1194–96 (Wyo.2003).

> 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria.' 'In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did.' In the context of alleged abuse of discretion, the assessment of the circumstances in the case is tantamount to an evaluation of whether the evidence is sufficient to support the decision of the district court. In review of the evidence, we accept the successful party's submissions, granting them every favorable inference fairly to be drawn and leaving out of consideration conflicting evidence presented by the unsuccessful party.

*Morris v. Morris,* 2007 WY 174, ¶ 5, 170 P.3d 86, 88–89 (Wyo.2007), quoting *CJ v. SA,* 2006 WY 49, ¶ 5, 132 P.3d 196, 199 (Wyo.2006) (other citations omitted).

[¶ 13] The statement challenged by West America was made by Vandon's attorney during a colloquy with the district court. We quote the statement (identified in bold type) in context, as follows:

> (Proceedings previously transcribed in transcript entitled "Transcript of Excerpt of Trial Proceedings," page 2, line 14 through[ ] page 4, line 3.)
>
> THE COURT: Mr. Harden, your response.
>
> MR. HARDEN: **Your Honor, there are four felony charges against Ms. Joelson in Arizona that were filed about July 15th, 2005. Ms. Joelson has entered a guilty plea to those charges. There has not been a sentencing. The sentencing is scheduled—it's been scheduled and rescheduled. The reason for that is because she was extradited to Wyoming on three felony charges.**
>
> MR. EDMONDS: Same objection even as to that, Your Honor.
>
> . . . .
>
> THE COURT: Let me interrupt. It seems like there are two things. One is the topic on which this was raised was sort of a discussion of place of residence as I recall, and then you were referencing some proceedings in the Arizona criminal cases. My thought would be that you could pursue that line of questioning without getting into what the charges were or whether they're being offered for impeachment purposes if you just make reference to that.
>
> Second, under Rule 609, if I agree with you, you're limited to ask the three or four questions, that is, have you been convicted of a felony, what is the felony or felony offenses, where was it at, and what was the disposition of the case. And so I think for impeachment purposes, the inquiry is limited to those topics.
>
> So I guess what I'd say is we'll go on to the next question, and if you're really looking back at further things that happened in the criminal case proceedings, let's stay away from referencing what the charges were and maybe make any inquiry that way. And then if you're going to impeachment, go ahead with the direct questions if you would.
>
> (Proceedings previously transcribed in transcript entitled "Transcript of Excerpt of Trial Proceedings," page 4, line 6 through page 6, line 1).

(emphasis added).

 [¶ 14] The excerpts referred to in the quote are not included in the record on appeal; consequently, we do not have the full context of the discussion. It appears, however, that the district court essentially upheld West America's objection, although it apparently would have allowed Vandon to ask di-

rect questions about the convictions, subject to further review by the court. West America does not direct us to any further testimony at the trial specifically referencing Ms. Joelson's criminal convictions.

[¶ 15] Nevertheless, West America claims that the statement by Vandon's attorney "fatally prejudiced" its case. We do not agree. After a bench trial, we presume the judge disregarded any inadmissible evidence in making a decision. *Donnelly v. Donnelly*, 2004 WY 72, ¶ 13, 92 P.3d 298, 302 (Wyo. 2004). Even if the evidence of Ms. Joelson's criminal history was inadmissible, a question we do not need to decide, there is nothing in the judge's decision indicating that he took Ms. Joelson's criminal history into account in rendering his decision. Consequently, we reject West America's claim that its case was fatally prejudiced when Vandon's attorney briefly referenced Ms. Joelson's criminal history.

### 2. *Mr. Pearson's Testimony*

[¶ 16] In its second issue, West America claims that Mr. Pearson's testimony was not probative of any material facts or issues in the case and the trial court erred in receiving documentary evidence based on his testimony. In support of its claim, West America points to parts of the transcript indicating that Mr. Pearson was confused during some of his direct examination. Although West America's argument is not completely clear, it apparently claims that Mr. Pearson was not competent to testify.

[¶ 17] The general rule is that a person is competent to testify "if he has a sufficient understanding to receive, remember, and narrate impressions and is sensible to the obligations of the oath." *Larsen v. State*, 686 P.2d 583, 585 (Wyo.1984). Failure to object to the competence of a witness at the time of the trial limits our review to plain error. *See, e.g., id.* at 584. In order to establish plain error, the appellant must satisfy a three-part test:

" ' * * * *First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must dem-

onstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.* * * *' "

*Id.* (citations omitted).

[¶ 18] We recently considered another case involving Mr. Pearson, Ms. Joelson and West America. *West America Housing Corp. v. Pearson*, 2007 WY 184, 171 P.3d 539 (Wyo.2007). We noted that Mr. Pearson's testimony in that case was somewhat unclear:

At trial Pearson testified in his own behalf. Pearson was 84 years of age at that time (November 6, 2006), and his testimony was not always as coherent as might be desired.

*Id.,* ¶ 4, 171 P.3d at 540. Nevertheless, we recognized that Mr. Pearson related some relevant evidence during his testimony. *Id.*

[¶ 19] The same conditions existed in this case. Mr. Pearson did seem to be confused during some of his testimony. However, he was able to relate relevant information regarding this case and West America did not raise an objection regarding Mr. Pearson's competence during the trial. On appeal, it does not offer any cogent argument or pertinent authority to establish it was plain error for the trial court to allow Mr. Pearson to testify.

[¶ 20] Moreover, we have examined the record and discovered that Mr. Pearson did not provide the foundation for any of Vandon's exhibits. The parties stipulated to the admission of many of the exhibits at the beginning of the trial. The district court admitted Vandon's other exhibits into evidence during other witness testimony. Interestingly, West America did offer exhibits for admission during its cross examination of Mr. Pearson. It, therefore, is surprising that it claims on appeal he was not competent to provide the foundation for any exhibits. Based upon these circumstances, we summarily reject West America's arguments.

### 3. *W.R.A.P. 10.05 Sanctions*

[¶ 21] Vandon requests that we grant sanctions in its favor pursuant to

W.R.A.P. 10.05. That rule states in relevant part:

> If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case. The amount for attorneys' fees shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00). The amount for damages to the appellee shall not exceed two thousand dollars ($2,000.00).

[¶ 22] In general, "we are reluctant to grant sanctions and will do so only in those rare circumstances where an appeal lacks cogent argument, where there is an absence of pertinent authority to support the claims of error, and/or when there is a failure to adequately cite to the record." *Amen, Inc. v. Barnard*, 938 P.2d 855, 858 (Wyo. 1997). While this appeal certainly is not a paradigm of good appellate practice and the arguments presented by the appellants are not persuasive, we cannot say that it satisfies our stringent standards for granting sanctions under W.R.A.P. 10.05. Consequently, we decline to do so.

[¶ 23] Affirmed.